Lane, C. J.
In 1833, Mrs. Betsey Eeynolds, now the wife of Harman Stidger, made an agreement with her brother-in-law, the defendant, to enter into partnership in farming, milling, and merchandise. The fixed capital was furnished by Mrs. Eeynolds; 352] the floating capital was to be provided on their *joint credit. The defendant was to take charge of the entire business, and to exert his utmost attention and time in carrying it on; the losses were to be equally shared, and the profits, after paying Mrs. Eeynolds $200 per annum, were to be equally divided.
The partnership subsisted, and was properly managed for more than two years, and terminated by mutual consent. The present suit is brought to enforce a settlement of its accounts.
The case has been twice referred, and it is now before us upon exceptions to the last master’s report. It is reserved to determino if the principles are just upon which he acted in taking the account.
The plaintiffs insisted that they had a right to hold the defendant “ accountable for such profits as could or ought to have been made by judicious management and ordinary success, in the several branches of business conducted by this firm, in the situation it occupied at the time, and under the circumstances apparently attending its operations.”
The defendant admitting this was the proper general rule, claimed that where he could show the amount invested and the amount drawn out by each, the amount of property on hand, and the amount of debts due, the profits may be computed from these elements, although he is unable to exhibit a running account of all the receipts, expenditures, profits, and losses of the business of the firm.
*353 The master, finding no evidence tending to excite suspicion of the want of integrity in Reynolds, or that his property had increased in any direction in a ratio disproportioned to his admitted resources, and that a son of Mrs. Stidger, whose moans of knowledge of the operations of the firm were ample, testified he never supposed any money or goods of the partnership were ever appropriated by Reynolds without account, and that he believed Reynolds made every proper effort to make the business profitable, has thought it most consistent with equity to adopt the plan of the defendant as the basis of his account.
The master is correct in his apprehension that the evidence *in the case in no degree leads to the belief of any want of [353 integrity and good faith in Reynolds, or that there has been any want of effort to render the business productive ; and it is highly probable that whatever be the principles of taking the account, the results will not differ widely from those reached by the master.
But these principles may be applied to other cases, and they should be such as are calculated to produce a just account in all settlements with trustees. The defendant placed himself in a situation where he assumed “ to take the charge of the entire business, and exert his utmost attention and time in carrying it on.” To this situation the duty of account was of necessity incidental, and the plaintiff had a right to demand of him, either the profits which the business ordinarily affords, or an explanation of the causes which have rendered it less productive. It would not do to permit a guardian or a trustee intrusted with the management of another’s property, to discharge himself from his responsibilities, by showing the amount received, the amount on hand, and his expenditures, with proof of his general fitness and integrity. He has incurred the obligation to render the subject of his trust productive, and he does not meet his duties unless he shows ordinary profits or the causes of failure. The adoption of a rule less stringent would give opportunity in many cases for the trustee to abstract from the funds with little risk of detection.
The master was not at liberty to change this general rule, and the account must be retaken. In the absence of a full and regular account, he must ascertain ordinary profits of such business, and require of the defendant proof to relieve him from this liability.
The allowance of a commission (or collecting since the dissolution of the partnership, of which .the plaintiffs complain, appears to us *354, 355 just. When, the partnership was dissolved, the uncollected debts might have been divided, but there was no liability on the defend-354] ant to collect thorn. If, with the consent *of his partner, be assumed this labor, a compensation for his trouble was a proper charge against thefirm.†
H. Griswold, for the complainants.
Harris and Brown, for the defendant.

The partnership agreement was in these words: “It is agreed between Betsey S. Reynolds and Madison Reynolds to enter into partnership in the business of farming, milling, and merchandising, for and during the term of three years from the first day of September next, by the name, style, and firm of M. Reynolds & Co. The said Betsey S. Reynolds to furnish the mills and farm, comprised of the mills, half of section 21, and the south, west quarter of section 16, of township 3, of range 8, in Stark county, Ohio; and the. capital for the purpose of carrying on the farming, milling, and merchandising is to be furnished by the parties respectively in equal proportions; and if at any time a larger proportion than one-half should be furnished by either of the parties, the excess is to be charged to the firm, with interest. The said Madison Reynolds is to take charge of the entire business, and to exert his utmost attention and time in carrying on the business, and in endeavoring to make it profitable. The said mill and farm, during the time, to be kept in good repair, and taxes upon all the active capital, and also taxes upon the north half of section 21, are to be paid at the expanse of the firm ; and all loses arising out of the business to be equally shared by the parties, *356 except unavoidable accidents and losses to the real property by fire. And the profits of the business to be shared by them as follows, to wit: The said Betsey S. to have set off to her §200 per annum, and the balance of the profits to be equally shared by the parties. And it is also understood by the parties, that either one shall hav-e power to dissolve this contract, by giving the other six months’ notice of their wish so to do.”